IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **RHONDA KAYE WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:17CV313 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Rhonda K. Williams ("Williams") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Williams alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) account for Williams's mild to moderate impairment in concentration, persistence, and pace; (2) weigh the opinion of her treating psychiatrist; (3) evaluate her credibility; and (4) perform a function-by-function analysis.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Williams's Motion for Summary Judgment (Dkt. No. 13) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Williams failed to demonstrate that she was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Williams filed for SSI and DIB in January 2013, claiming that her disability began on January 2, 2013, due to broken cervical vertebra, rib, right wrist, and hand, nerve damage, carpal tunnel syndrome, chronic pain, shooting pain, arthritis, anxiety, panic attacks, obsessive compulsive disorder, depression, muscle spasms, and migraine headaches. R. 243, 247. Williams's date last insured was December 31, 2017; thus she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 243; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Williams's applications at the initial and reconsideration levels of administrative review. R. 66–77, 78–89, 92–103, 104–115. On January 6, 2016, ALJ Geraldine H. Page held a hearing to consider Williams's claims for SSI and DIB. R. 35–65. Counsel represented Williams at the hearing, which included testimony from vocational expert Gerald K. Wells. On February

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

19, 2016, the ALJ entered her decision analyzing Williams's claims under the familiar five-step process[2] and denying her claim for benefits. R. 17–33.

The ALJ found that Williams was insured at the time of the alleged disability onset and that she suffered from the severe impairments of degenerative disc disease of the cervical spine, status post fusion, fracture of the right wrist, status post surgery, lumbar spine degenerative changes, headaches/migraines, anxiety disorder, depressive disorder, and obsessive compulsive disorder.[3] R. 19. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 20–22. The ALJ specifically considered listing 1.02 (major dysfunction of a joint), listing 1.04 (disorders of the spine), listing 12.04 (affective disorders), and listing 12.06 (anxiety related disorders). Id. The ALJ found that, regarding her mental impairments, Williams had no restriction in activities of daily living, moderate difficulties in social functioning, mild to moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. R. 21.

The ALJ concluded that Williams retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 22. Specifically, the ALJ found that Williams can only occasionally kneel, crawl, crouch, stoop, balance, climb ramps and stairs, can frequently, but not constantly, reach overhead with her bilateral upper extremities and handle, finger, and feel with

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] Williams was 43 years old on the alleged disability onset date, making her a younger person under the Act. R. 32.

3

the right upper extremity. She should avoid hazardous machinery, working at unprotected heights, vibrating surfaces, and climbing ladders ropes, and scaffolds. She also cannot work around excessively loud background noise, such as jackhammers, construction equipment, and heavy traffic, and can have no interaction with the public. Williams would be absent up to one day every two months and her pace would be slowed by five percent due to the need to recheck work. Id. The ALJ determined that Williams is unable to perform her past relevant work as a cashier, waitress, and finisher, but that she could perform jobs that exist in significant numbers in the national economy, such as folder/sorter and mail room clerk. R. 32. Thus, the ALJ concluded that Williams was not disabled. R. 33. Williams appealed the ALJ's decision and the Appeals Council denied her request for review on May 1, 2017. R. 1–3.

## ANALYSIS

Williams alleges that the ALJ failed to properly: (1) account for Williams's mild to moderate impairment in concentration, persistence, and pace; (2) weigh the opinion of treating psychiatrist Jitendra Desai, M. D.; (3) evaluate Williams's credibility; and (4) perform a function-by-function analysis.

**A. Medical History**

1. Physical Impairments

On Williams's alleged disability onset date of January 2, 2013, she was injured in a car accident where she sustained a C2 cervical fracture, closed rib fracture, and right wrist fracture. R. 380–90.[4] Williams underwent percutaneous screw fixation for the scaphoid fracture in her wrist on January 10, 2013, and subsequent physical therapy. R. 338, 556, 675. Williams also had

---

[4] Hospital records indicate that Williams struck the back of another vehicle and subsequently rolled multiple times, and was transported to the hospital by ambulance, complaining of severe neck and right arm pain. R. 380. At the hearing before the ALJ, Williams testified that she last worked on December 30, 2012, and never returned to work after the car accident. R. 50.

4

follow up visits for her neck fracture, complaining of neck pain, and underwent cervical fusion on July 1, 2013. R. 371-73, 577. Following her surgery, Williams attended physical therapy in August and September 2013, where she made progress, but "reached a plateau . . . due to [cervical] collar restrictions and high levels of pain." R. 643, 662. Williams continued to consistently complain of headaches and neck pain, as well as pain radiating to her upper extremities, and numbness and tingling in her feet, and began pain management in February 2014. R. 703, 728, 736, 748, 813. In July 2014, Williams complained that her neck pain was getting worse and her pain management physicians considered a low dose narcotic, but noted that her recent drug screen was positive for alcohol, but negative for her prescribed medications. R. 836. In November 2014, she was assessed with fibromyalgia and prescribed Lyrica. R. 843. Williams returned for a follow-up at the neurosurgery clinic in October 2015, continuing to complain of significant neck pain; Gary Simonds, M.D., indicated that her pain could be related to hypermobility at levels below the fusion and that extending the fusion could help, but "would not be a guarantee by any measure." R. 794. In November 2014, she returned to her pain management doctor, reporting worse pain since a fall on Halloween, and was started on Hydrocodone. R. 804.

    2. <u>Mental Impairments</u>

Beginning in November 2011, while she was still working, Williams saw Jitendra Desai, M.D. for panic attacks and OCD, indicating that "she has been having these issues since age 7." R. 334. Throughout visits in 2012, Williams reported "doing well" with improved OCD tendencies. R. 326, 328, 330–32. Following her January motor vehicle accident, Williams returned to Dr. Desai in March 2013, complaining of pain, depression, and anxiety, and was assessed with normal attention and concentration, appropriate, angry mood, and intact memory.

5

R. 638. Williams saw Dr. Desai again in September 2013, and January, July and December 2014. R. 639, 716, 788. During these visits, Williams reported ongoing recovery from her accident and was assessed with normal attention and concentration, as well as stable anxiety and OCD.

    3.   Medical Opinion Evidence

In August, 2013, Richard Surrusco, M.D. a state agency doctor, reviewed the record and found that Williams was capable of a limited range of light work, including limited overhead reaching. R. 66–89. In March 2014, Jack Hutcheson, M.D., another state agency doctor, agreed that Williams could perform a limited range of light work. R. 92–13.

In August 2013 and March 2014, respectively, state agency psychologists Howard S. Leizer, Ph.D. and David Deaver, Ph.D., performed a records review and found a non-severe anxiety disorder with no restrictions in activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. R. 72, 84, 99,

On March 24, 2015, Dr. Desai completed a form titled Medical Opinion re: Ability to do work-related activities (mental). R. 781–85. Dr. Desai checked boxes indicating mild to marked limitations related to the mental abilities and aptitude needed to do unskilled, semiskilled, and skilled work, as well as particular types of jobs. In support for the moderate and marked limitations found, Dr. Desai wrote, "depression, chronic pain, and ataxia" as well as distractibility. R. 783–84.

   **B.  Mental Impairments under SSR 96-8P**

Williams argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P.[5]  See Titles II & Xvi: Assessing Residual Functional Capacity in Initial

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding

Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Williams asserts that the ALJ failed to properly address her moderate limitations in concentration, persistence, and pace, as well as her moderate limitation in social functioning, in assessing her RFC. The Commissioner counters that the ALJ adequately accounted for these limitations by identifying unskilled jobs and including both a pace and social functioning limitation in the RFC.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's discussion of Williams's mental limitations satisfies the requirements of SSR 96-8. The ALJ considered Williams's own statements, mental symptoms, and mental health treatment and provided the narrative discussion required by the regulations. The ALJ found that

---

on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

Williams had moderate difficulties in both social functioning and maintaining concentration, persistence, or pace. R. 21. Regarding social functioning, while the ALJ acknowledged Williams's testimony that she has anxiety, and often has panic attacks if she has to be around crowds, the ALJ referenced medical records showing Williams's symptoms are well controlled with medication, as well as the absence of complaints of panic attacks and difficulty being around people. R. 21. The ALJ wrote that she, "has given [Williams's] testimony some benefit of the doubt by finding she has moderate difficulties in social functioning." Id.

Regarding concentration, persistence, or pace, the ALJ noted that Williams "did not complain of or seek treatment for deficiencies in concentration, persistence, and pace" and that her mental status examination notes from Dr. Desai showed consistent normal mental status, without deficiencies in memory or concentration.[6] R. 21–22. However, the ALJ gave Williams's testimony that she "constantly needs to recheck things due to her OCD . . . some benefit of the doubt" and found this need could cause mild to moderate limitations in this area. The ALJ wrote, "Williams has been given the corresponding limitation in her RFC that her pace would be five percent slower because she would recheck her work. Otherwise, the significant consistent treatment evidence showing no mental abnormalities justifies no other limitations." R. 22. The ALJ also noted the state agency psychologists' conclusion that Williams's mental impairments were nonsevere, and she had only mild difficulty in maintaining concentration, persistence, and pace. R. 29. The ALJ gave these opinions some weight, noting treatment notes showing Williams's consistent reports that her symptoms were well controlled with medication and stable. R. 29.

---

[6] Dr. Desai's indication that "distractibility" would impact Williams's ability to understand, remember, and carry out detailed instructions is not supported by his own treatment notes, which generally assess Williams with normal attention and concentration. R. 783.

The ALJ also emphasized that, while Williams had complained of symptoms related to anxiety and OCD for over a year prior to her alleged onset date, she was still working full-time during that period and never alleged her symptoms interfered with her ability to work.[7] Further, Williams saw her psychiatrist for routine follow-ups relatively infrequently, approximately every three to six months, and never required inpatient hospitalization. R. 30.  The ALJ noted Williams's initial testimony at the hearing, which the ALJ understood to communicate she had no limitations in the area of concentration, persistence, or pace.[8] R. 21.

The ALJ considered the medical opinions, claimant's testimony, and evidence of mental impairment, and explained the basis for her ruling, thus, the court is capable of meaningfully reviewing the RFC.  See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions); see also Monroe, 826 F.3d at 189 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a record of the basis

---

[7] At the hearing, he ALJ asked, "Now you say you left the last job because of your motor vehicle accident . . . so you were in good health . . . before that?" R. 50. Williams's responded, "Yes." Id.

[8] At the hearing, the ALJ asked, "Do the medications [for OCD and anxiety] help? Williams responded, "Oh, yes, very much so. Or I couldn't sleep at night because I have insomnia." R. 49.  However, Williams responded to her attorney's questions as follows:

> Q: Is it fair to say that you have trouble staying on task or finishing things? Is that something that's an issue or a problem for you?
> A: Oh, yes. I might start something, but then if I have back problems or anything, I'll have to stop and rest or lay down and get back to it later.
> Q: Does either the anxiety or the OCD interfere with you being able to stay on task as well?
> A: Oh, yes. Because I just, I can't' function if I'm having high anxiety or because I'm freaking out because just I'm panicking really bad, and it just throws me off guard, and I just have to take a time out.

R. 52.

9

for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.").

Williams also argues that, "as a result of [the ALJ's] failure to properly consider [Williams's] mild to moderate limitations in maintaining concentration, persistence, [and] pace, and [Williams's] moderate limitations in social functioning, the ALJ did not pose any hypothetical questions to the vocational expert that included these limitations. Pl.'s Br. at 12, Dkt. No. 14.

In Mascio, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).  The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id.  Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary.  Id.

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Here, the ALJ accounted for Williams's moderate impairments in social functioning and mild to moderate impairments in maintaining concentration, persistence, or pace in both her hypothetical question to the VE and the RFC finding in her ruling.

10

The ALJ's hypothetical question and RFC assessment included limitations of no interaction with the public, absences up to one day every two months, and pace slowed by 5% due to the need to recheck work. R. 22. In his testimony, the vocational expert specifically confirmed a limitation to light jobs with no public contact, "but which would not be production level jobs in my opinion based upon that pace reduction." R. 60. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitations, Williams is capable of performing the basic mental demands of light work, with the specified accommodations. Indeed, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized in Monroe, where the Court of Appeals found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and "specific application" of the law to the record. See Monroe, 826 F.3d at 189 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

Here, the ALJ discussed Williams's medical records showing her symptoms are well controlled with medication, including her mental status examination notes from Dr. Desai showing consistent normal mental status, without deficiencies in memory or concentration, the absence of complaints of panic attacks and difficulty being around people, and the state agency psychologists' conclusion that Williams's mental impairments were nonsevere. R. 21–22, 29.

This court is not "left to guess about how the ALJ arrived at [her] conclusions."[9] Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015).

### C. Treating Psychiatrist's Opinion

Williams argues that the ALJ's decision to give little weight to Dr. Desai's opinion, as set out in the March 2015 form entitled Medical Opinion re: Ability to do work-related activities (mental), is not supported by substantial evidence. The Commissioner counters that Williams fails to cite to any evidence supporting Dr. Desai's assessment of marked mental limitations and argues that the ALJ reasonably evaluated Dr. Desai's "check-the box form." D.'s Br. at 10, Dkt. No. 17.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater,

---

[9] Williams argues that this case is similar to Rice v. Comm'r, Soc. Sec. Admin., No. CV SAG-16-2582, 2017 WL 2274947, at *3 (D. Md. May 24, 2017), where the court remanded to the Commissioner, noting the cursory analysis by the ALJ, which "entirely fails to address Ms. Rice's ability to sustain work over an eight-hour workday." However, here, the ALJ provided a sufficient analysis, and discussed the medical records showing no deficiencies in memory or concentration.

76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

Here, the ALJ appropriately considered these factors and the record, in determining the weight to give to the opinion of Dr. Desai. The ALJ gave Dr. Desai's opinion little weight, writing it was "inconsistent with the medical evidence of record, including his own treatment notes." R. 28. In support, the ALJ emphasized that Dr. Desai's notes showed visits only every three to six months, contained reports from Williams that her symptoms were "stable and well controlled with Klonopin and Paxil," and included consistent normal or nearly normal mental status exams. Id. Thus, contrary to Williams's contention that the ALJ "does not go through the factors outlined in 20 C.F.R. § 416.927(c)(2)," the ALJ specifically considered the treatment relationship and justified the amount of weight afforded with specific reasons, including that, while Williams had treated with Dr. Desai since 2011, she saw him relatively infrequently, and his medical opinion was not consistent with the record as a whole. R. 27–28; see Hendrix v. Astrue, 2010 U.S. Dist. LEXIS 90922, at *7–8, 2010 WL 3448624 (D.S.C. Sept. 1, 2010) ("[A]n

13

express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d) factors and provides good reasons for his decision."); Overcash v. Astrue, 2010 U.S. Dist. LEXIS 141695, at *16–17 (W.D.N.C. May 21, 2010).

The ALJ also noted that the severe limitations found by Dr. Desai, that Williams could not use public transportation or maintain regular attendance, are distinct from the limitations alleged by Williams during the hearing, that she had difficulty interacting with the public. R. 28, 48.[10] The ALJ highlighted that the record lacks any evidence that Williams had difficulty with public transportation or attendance. Further, the ALJ gave the global assessment of functioning scores Dr. Desai assigned to Williams, which were generally in the range of 51–60, "some weight," noting that scores in this range indicate no more than moderate symptoms or functioning limitations, which is consistent with Dr. Desai's treatment notes showing Williams's mental impairments were well-controlled by medication. R. 28–30.

The ALJ considered the opinion of Dr. Desai, together with the evidence in the record, and determined that Williams was capable of a limited range of light work. This is the ALJ's job: to review the medical evidence of record, weigh the medical opinions, and determine an RFC that represents Williams's functional capacity. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinion of Dr. Desai little weight, and recommend that it be affirmed.

### D. Credibility

Williams argues that the ALJ's credibility findings are not supported by substantial evidence.[11] In support, Williams asserts that the "ALJ ignores the evidence of record

---

[10] Dr. Desai concluded Williams had no difficulty interacting with the public. R. 783.

[11] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II &

14

documenting that [Williams's] issues with her grip stem not only from her right wrist fracture but also from her cervical impairments, which results in numbness and tingling in her upper extremities." Pl.'s Br. at 22, Dkt. No. 14. Williams asserts that this upper extremity numbness and tingling "results in functional limitations in the use of her arms and hands." Pl.'s Br. at 23, Dkt. No. 14. Similarly, Williams disagrees with the ALJ's conclusion that her physical examination results showed "mostly mild abnormalities" following her fracture repairs, given that the records document "continued severe neck pain." Pl's. Br. at 25, Dkt. No. 14. Regarding her mental impairments, Williams disagrees with the ALJ's findings regarding her ability to work full time before her alleged onset date, claiming that her anxiety and depression only remained stable after the accident because she was not "under the additional stress of working." Pl.'s Br. at 24, Dkt. No. 14.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Williams's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of

---

XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after the ALJ's consideration of Williams's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Williams's report of her own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

In this case, the ALJ found Williams's statements regarding the severity of her limitations not entirely credible in light of her treatment history and the objective medical evidence. The ALJ's opinion includes a detailed consideration of Williams's medical history along with Williams's own allegations and the ALJ adequately supported her credibility finding. The ALJ emphasized that Williams had "not consistently complained of and sought treatment for symptoms related to her alleged poor grip strength and weakness in her right hand," and reported improvements in her symptoms a few months after her right wrist surgery, as well as improved grip strength after physical therapy. R. 30. Her final physical therapy session, in May 2013, notes that she "has returned to all functional activities" and is able to cook, clean, do laundry, and vacuum. R. 675–76. Addressing Williams's argument that her cervical impairments impact her grip and result in tingling and numbness in her extremities, while the record does contain instances where Williams complained of neck pain radiating down her arms, it also documents instances where she denied radiating pain or weakness. Compare R. 722 ("denies radicular pain or weakness") with R. 727 (complains of "intermittent[] . . . numbness and tingling to bilateral upper extremities") . In short, the ALJ adequately discussed and considered the medical record, including Williams's testimony regarding her neck pain and numbness and tingling in her arms and hands, and ultimately included limitations on bilateral overhead reaching, as well as

16

handling, fingering, and feeling with the right upper extremity in Williams's RFC.[12] R. 22–23, 25–26, 30.

Williams fails to point to records or any doctor's assessment to support her contention that her mental status was stable after her alleged onset date and motor vehicle accident only because she was not working. In contrast, the ALJ's observation that Williams "generally reported [that her mental impairments] were stable and controlled with medications" finds support in the medical record. R. 30. Finally, though Williams cites to Brown v. Comm'r Soc. Sec. Admin., to bolster her argument that the ALJ did not explain "how the evidence she cited actually supports her [RFC] determination," Williams does not specify how the holding in Brown applies. Pl's Br. at 25, Dkt. No. 14; 873 F.3d 251. Here, unlike in Brown, the ALJ did not rely heavily on Williams's daily activities to discount her testimony at the hearing, but instead, the ALJ pointed to specific medical evidence.[13]

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those

---

[12] Williams also argues that "one aberrant drug screen" did not support the ALJ's conclusion that she was not compliant with her treatment. However, The ALJ did not find that "one aberrant drug screen" incontrovertibly proved Williams was incompliant. Instead, the ALJ noted that "the urine drug screen result[] [which was negative for benzodiazepines, which Williams was prescribed for anxiety] suggest[s] that she may have gone for significant periods without needing to use [her anxiety medication]." R. 31. Additionally, this was just one factor discussed by the ALJ in her credibility analysis.

[13] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

17

"exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence or disturb her credibility finding. Therefore, I find that substantial evidence exists to support the ALJ's determination that Williams's testimony is only partially credible, and that Williams is capable of performing work at the level stated in the ALJ's opinion.

### E. Function by Function Analysis

Williams argues that the ALJ erred by failing to perform a proper function by function analysis of her impairments. In support, Williams asserts that the ALJ ignored evidence in the medical record documenting her lumbar pain, severe cervical pain, and numbness and tingling in her upper and lower extremities, failed to make specific findings regarding the impact of her manipulative limitations on her ability to work, and whether or how often her impairments would necessitate breaks or absences from work. These arguments amount to disagreements with the ALJ's RFC determination and essentially ask the court to reweigh the evidence.

A function by function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe, 826 F.3d at 189 (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion,

18

discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a detailed summary of Williams's medical records, the medical opinions, Williams's hearing testimony and the ALJ's conclusions. R. 20-33. Further, the RFC sets out Williams's exertional limitations, including amounts of weight she can lift and/or carry, amounts of time that she can perform activities such as standing, walking, reaching, handling, fingering, and feeling, hazards she must avoid, including vibrating surfaces and climbing, and absences from work. R. 22.

**CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  June 14, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge